# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

ERICA CAMP,                                )
                                           )
            Plaintiff,                     )
                                           )
    v.                                     )       No.  1:18CV278 RLW
                                           )
ANDREW M. SAUL, Commissioner               )
of Social Security,[1]                     )
                                           )
            Defendant.                     )

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. §§ 405(g) for judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying the

application of Erica Camp ("Plaintiff") for Disability Insurance Benefits ("DIB") under

Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.  Plaintiff has filed a brief in

support of the Complaint (ECF No. 15), and Defendant has filed a brief in support of the

Answer (ECF No. 20).  For the reasons set forth below, the Court affirms the decision of

the Commissioner.

### I.  Procedural History

Plaintiff filed her application for DIB under Title II of the Social Security Act on

January 19, 2016.  (Tr. 14, 164-70)  Plaintiff claimed she became disabled on August 15,

---

[1]  Andrew M. Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting
Commissioner Nancy A. Berryhill as the Defendant in this suit.  No further action needs to be
taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security
Act, 42 U.S.C. § 405(g).

2015 because of a traumatic brain injury; post-traumatic stress disorder; short term memory loss; post-concussion syndrome; hearing; headaches; chronic fatigue; neck pain; and blurred vision. (Tr. 85) Plaintiff was initially denied relief on March 9, 2016. (Tr. 84-88) At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on January 23, 2018. (Tr. 35-73, 92) By decision dated February 9, 2018, the ALJ found Plaintiff was not disabled. (Tr. 14-26) On September 11, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 4-6) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Medical and Other Relevant Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff's attorney presented an opening statement. Counsel stated Plaintiff was a younger individual injured in a motor vehicle accident in August 2015. She had not been able to work since that time. As a result of the accident, Plaintiff suffered from post-concussive syndrome with significant headaches, post-traumatic stress disorder ("PTSD"), and a somatic disorder. Other problems preventing her ability to work included vertigo, dizziness, optical issues, visual changes, and brain dysfunction due to physical causes and mental health issues. Doctors have opined Plaintiff was unable to engage in full-time work activity, and her attempt at a part-time position resulted in termination due to on-the-job mistakes. Thus, counsel argued Plaintiff's combination of impairments prevented her from working full-time on a regular basis. (Tr. 40-42)

Upon examination by Plaintiff's attorney, Plaintiff testified she was 39 years old and completed her LPN degree. She stated she was unable to work due to headaches,

2

lingering cognitive issues from the accident, dizziness and nausea on a daily basis, anxiety, and depression. Plaintiff experienced headaches daily and debilitating migraines three or four times a week. The migraines necessitated lying down in the dark and staying away from people. She described the pain as sharp and intense, and she felt wiped out and slow the next day. Plaintiff sometimes vomited, and she had to cancel any planned activities. Medication does not relieve the migraine pain. (Tr. 42-46)

Plaintiff stated she had other cognitive issues affecting her ability to work. She took a long time to process questions, and she had difficulty with numbers and math. Plaintiff also had problems reading a book because she had to read sentences several times to comprehend, and she often forgot what she read. In addition, Plaintiff had difficulty processing and comprehending instructions. She had a hard time focusing and became dizzy when driving. Plaintiff also experienced dizziness and nausea during the day, which lasted several minutes to several hours. Further, Plaintiff testified to having blurred vision, which worsened when she was overstimulated or had brain fatigue. (Tr. 46-53)

Plaintiff further testified regarding anxiety and depression, stating she started experiencing random anxiety attacks after the accident. She felt as though she was having a heart attack. Plaintiff tried to take deep breaths to calm down, but an attack wiped her out for the remainder of the day. Plaintiff's depression caused her to cry and want to be alone. On those days, which occurred a few times a week, she did nothing all day. She no longer had routine days, as each day depended on how she felt. Plaintiff testified she woke up between 7:00 and 8:30 a.m., went through speech therapy or

memory finding routines, rested, and tried to do housework. She needed to rest between 15 minutes and a couple hours at a time. On a good day, Plaintiff was able to do housework for a couple hours with breaks. She could wash dishes and do laundry. She no longer cooked because she had done some stupid things in the kitchen. Plaintiff also took care of her dogs, attended church activities, and helped a cancer patient with doctor's appointments. Plaintiff no longer used a computer due to the brightness of the screen, the scrolling which caused dizziness, and problems typing. In addition, Plaintiff became dizzy and nauseous when using stairs. Standing caused fatigue. She also became fatigued when grocery shopping but stated she could shop from 15 minutes to an hour. Lifting groceries also caused dizziness due to the movement. (Tr. 53-65)

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE to assume an individual of Plaintiff's age, education, and past work. The person could not work at unprotected heights, around moving mechanical parts, or around hazards. She was limited to performing simple, routine tasks, not at a fast production rate. The individual was also limited to only occasional changes in the work setting. Given this hypothetical, the VE testified the person was unable to perform Plaintiff's past work but could work as a laundry worker, cleaner I, and lamination assembler, which was not a fast-paced assembly position. However, if the hypothetical individual was off task 15 percent of the workday or absent two or more days per month due to symptoms, the person would be unable to perform Plaintiff's past work or any other work. The VE stated his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and based on 29 years of experience. (Tr. 65-69)

4

Plaintiff's counsel also questioned the VE, asking him to assume the job needed to exclude prolonged visual focus on written materials or small items, and precluded operation of work duties around bright monitors or lighting. The VE stated those limitations eliminated the lamination position. Further, if the person required a ten-minute break every hour, all positions would be eliminated. (Tr. 69-70)

On continued examination of the Plaintiff by her attorney, Plaintiff testified she had trouble sleeping because she had a hard time shutting down at night. Other times she would sleep for days. She took Paxil and Imitrex because she did not have healthcare coverage and could not afford more medications. She did not see a treating physician or primary care doctor for financial reasons. (Tr. 70-73)

In a Function Report – Adult, Plaintiff stated she was unable to concentrate and experienced headaches, dizziness, unsteadiness, decreased mental ability, and fatigue which limited her ability to work. She was able to take care of her pets and cook frozen meals and canned soup. Plaintiff also did laundry and dishes, but not on a regular basis. She opined her conditions affected her ability to squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, and use hands. She had problems with comprehension and short-term memory with respect to following instructions. (Tr. 227-34)

Plaintiff was involved in a motor vehicle accident on August 15, 2015. (Tr. 158-63) She was transported to the ER and released the following day with a diagnosis of cervical strain (whiplash); forearm contusion and abrasion; and rib contusion. A CT scan of the head on August 17, 2015 showed no acute intercranial abnormality. (Tr. 444-58)

On August 19, 2015, Plaintiff complained of a headache, nausea, vomiting, dizziness, vision disturbance, and difficulty concentrating. Plaintiff was referred to a concussion clinic. (Tr. 306-21)

Plaintiff began treatment with Heidi Hunter, M.D., on August 27, 2015. Review of systems was positive for fatigue, blurred vision, ear pain, nausea, dizziness, headaches, weakness, trouble walking, depression, irritability, mood swings, and sadness. Objective testing was normal. Dr. Hunter assessed concussion without loss of consciousness, nausea, acute ataxia, and headache. Dr. Hunter advised Plaintiff not to return to work until she was feeling better. Follow up visits with Dr. Hunter revealed normal objective findings with a tearful mood. Plaintiff wore sunglasses during the exams. Dr. Hunter advised Plaintiff to slowly restart work on a part-time basis but not to drive. However, in December 2015, Dr. Hunter recommended Plaintiff stop working for 2 weeks to attempt to alleviate headaches. Dr. Hunter also recommended speech therapy, physical therapy, and occupational therapy. On October 6, 2016, Plaintiff continued to complain of headaches due to trauma and a spinning sensation. Prescription medications throughout treatment included Elavil, Paxil, Effexor, Klonopin, Imitrex, and Topamax. (Tr. 260-67, 394-425, 459-64, 790-815, 826-93, 895-919)

Plaintiff was also treated by Carter P. Fenton, D.O., from August 2015 through March 2016. During that time, Dr. Fenton opined Plaintiff was disabled due to an accident. (Tr. 465-74, 947-57, 1075-78)

On December 11, 2015, Dr. Stephen Jordan, Ph.D., examined Plaintiff for memory loss from concussion and post-concussion syndrome. Plaintiff reported memory loss,

6

anxiety symptoms, and pain from headaches. Mental status exam revealed anxious, irritable, and tearful mood, as well as anxious affect. Her thought processes and content were logical and appropriate. Dr. Jordan noted no obvious evidence of marked impairment of memory, executive functioning, language, or concentration. Plaintiff did exhibit occasional blocking/word finding. (Tr. 440-42)

On January 21, 2016, Plaintiff was evaluated by Shannon Dark, PsyD, for complaints of residual deficits since her motor vehicle accident. Plaintiff reported she was terminated from her management position a week prior. She tried to return to work but made unacceptable mistakes. Mental status exam revealed irritable behavior; an "on edge" mood due to stimulant medication; mildly expansive range and intensity of affect; normal speech, orientation, thought process, and thought content; and mild neurocognitive difficulties. Dr. Dark assessed PTSD; major depressive disorder, recurrent, moderate; and mild neurocognitive disorder. (Tr. 428-33)

Plaintiff was treated by Sisira Yadala, M.D., a neurologist, on April 22, 2016 and July 11, 2016. Plaintiff complained of headaches, dizziness, nausea, cognitive problems, vision and hearing problems, and numbness and tingling in her hands and feet. Plaintiff also reported experiencing anxiety, depression, sadness, and sleep disturbance. Dr. Yadala noted a brain MRI after symptom onset was unrevealing other than mild nonspecific white matter changes. Plaintiff took numerous medications which caused some side-effects overlapping with symptoms of post-concussive syndrome. Dr. Yadala recommended tapering off some of Plaintiff's medications. When Plaintiff returned in July, she reported continued symptoms consistent with post-concussive syndrome.

Plaintiff had resumed taking Elavil, and she continued Topamax and an increased dose of Inderal. The Topamax helped the headaches. Dr. Yadala ordered speech therapy and added a scopolamine patch for dizziness and clonazepam for sleep. (Tr. 960-68)

Plaintiff underwent a language and cognitive evaluation with Martha J. Cook, PhD, CCC-SLP. Dr. Cook opined Plaintiff had residual cognitive effects from her injury, including difficulties in memory and language. Dr. Cook recommended further cognitive and language rehabilitation, noting Plaintiff's excellent potential for further recovery. (Tr. 816-25, 894)

On July 13, 2016, neurologist David M. Peeples, M.D., performed an independent medical evaluation. Neurologic exam showed fluent speech with no word finding difficulties and normal response time. Plaintiff was frustrated with attempts at higher level executive mental tasks but could do them. Dr. Peeples summarized Plaintiff's residual neurologic symptoms were consistent with the nature of her head injury from the accident. He recommended a repeat neuropsychological evaluation to determine the scope and extent of her cognitive and neuropsychological deficits. Dr. Peeples opined Plaintiff was not at maximum medical improvement such that a rating of permanent partial disability was premature. (Tr. 920-22) Dr. Peeples also reviewed subsequent reports and concluded Plaintiff had a 0% rating of permanent partial disability attributable to the 8/15/15 accident. He further opined Plaintiff needed no work restrictions as a result of her injury, and any work restriction would be due to non-work related mental health issues. (Tr. 1241-42)

An independent medical evaluation by Elizabeth F. Pribor, M.D., on October 24, 2016 revealed diagnostic opinions of PTSD with trauma being childhood abuse; major depressive disorder with anxious distress, recurrent, moderate; dependent personality disorder; status post-concussion with residual "extensive" symptoms; and history of polycystic ovarian syndrome. Dr. Pribor recommended a full neuropsychological test and deferred further recommendations until after the testing and report. (Tr. 924-40)

Plaintiff was treated by Russell C. Cantrell, M.D., an orthopedic sports medicine physician, on November 21, 2016 for complaints of post-concussive symptoms. Dr. Cantrell opined some of Plaintiff's medications could be causing or contributing to Plaintiff's subjective complaints she attributes to a concussion. He did not recommend further treatment or diagnostic testing of Plaintiff's subjective complaints of right hand, right knee, and cervical spine pain, for which no physical restrictions were necessary. (Tr. 1024-41)

Robert Fucetola, Ph.D., performed a neuropsychological evaluation on December 15, 2016. Plaintiff complained of headaches controlled with medication other than a breakthrough headache once a week. She also reported fatigue, neck and right knee pain, right hand numbness, improved short term memory, decreased long term memory and attention, stuttering speech, and slow comprehension. Her mood was okay. Plaintiff's activities included engaging in brain games, attending church and Bible studies, and going out with friends a few times a week. Plaintiff took several medications and stated Topamax did not cause cognitive side effects. Dr. Fucetola administered several tests to Plaintiff over the 5.5-hour evaluation. Dr. Fucetola opined Plaintiff's concussion was not

9

associated with progressive or delayed cognitive problems, and her cognitive decline most likely resulted from effects of medications, mood/sleep quality, and mood. Dr. Fucetola recommended outpatient cognitive behavioral therapy to focus on her somatic symptoms, noting he could not determine whether Plaintiff's mood and anxiety symptoms were related to her accident. He did not recommend further speech or cognitive rehabilitation therapy, and he suggested Plaintiff revisit tapering her medications which likely contributed to her cognitive symptoms. Dr. Fucetola further recommended Plaintiff resume as many pre-injury life activities as possible, including driving and returning to work as an LPN. Dr. Fucetola opined objective indicators of symptoms were important, as Plaintiff over-reported her symptoms of pain and mood, which Dr. Fucetola observed did not interfere with task performance during Plaintiff's exam. (Tr. 970-81)

Thomas J. Lantsberger, Ph.D., performed an independent psychological evaluation on January 25, 2017. Dr. Lantsberger assessed PTSD, with the primary stressor being pre-existing abuse and death of mother; major depression, recurrent, moderate, with anxiety features; neurocognitive deficits, residual to concussion; somatic symptom disorder; and rule out dependent personality disorder. Dr. Lantsberger opined Plaintiff experienced true emotional and physical distress following her accident, but the accident was not the prevailing factor in her current clinical picture. He concluded Plaintiff suffered from psychiatric injuries prior to the accident. Dr. Lantsberger recommended a brief course of individual psychotherapy and diminished use of a heavy medication

regimen. He also strongly encouraged physical activity and relaxation strategies. (Tr. 1000-13)

Dr. Lantsberger treated Plaintiff from February 10, 2017 through October 20, 2017. (Tr. 984-89, 1017-23, 1048-49, 1056-57, 1243-44, 1249-50, 1254-55, 1274-75, 1296-1306, 1313) Dr. Lantsberger initially recommended Plaintiff remain off work but on April 11, 2017 he approved Plaintiff to work Monday, Wednesday, and Friday for 4 hours per shift with a 10-minute break each hour performing office/sedentary work. On October 20, 2017, Dr. Lantsberger noted Plaintiff had completed her care and was at maximum medical improvement. However, she had not met her goal of returning to work. Dr. Lantsberger released Plaintiff to full-duty status with no restrictions. (Tr. 1313)

Plaintiff also continued treatment with Dr. Cantrell. (Tr. 982-83, 990-95, 1014-16, 1042-46, 1052-54, 1230-32, 1269-73, 1277-82, 1307-12) Plaintiff acknowledged improvement in her neck and knee pain and requested refills of medications including Topamax and Horizant. On March 29, 2017, Dr. Cantrell noted Plaintiff complained of pain but did not exhibit obvious pain behaviors. Dr. Cantrell allowed Plaintiff to return to sedentary work activities and recommended she participate in driving therapy and continued cognitive behavioral therapy. (Tr. 1230-32) On April 25, 2017, Dr. Cantrell recommended job restrictions to lifting less than 25 pounds and working five days per week. He noted her sleep improved with Vistaril. (Tr. 1269-73) On May 16, 2017, Dr. Cantrell found no physical limitations to returning to work activities. (Tr. 1279-80) On October 4, 2017, Plaintiff reported an increase in headaches after discontinuing Topamax.

11

Dr. Cantrell reinstated Topamax and noted Plaintiff had reached maximum medical improvement. He did not schedule a follow up appointment. Dr. Cantrell opined Plaintiff did not require any restrictions to work activities as a result of her accident. (Tr. 1311-12)

Dr. Pribor also conducted further evaluations of Plaintiff. (Tr. 1283-95, 1425) On July 19, 2017, Dr. Pribor's evaluation revealed PTSD from abuse during childhood; major depressive disorder with anxious distress, recurrent, moderate; dependent personality disorder; somatic symptom disorder; and history of concussion. Dr. Pribor opined Plaintiff's injury combined with her preexistent psychiatric disorders were the prevailing cause of her somatic symptom disorder. Dr. Pribor recommended Plaintiff return to increased functioning in a stepwise manner. (Tr. 1292-95) On November 7, 2017, Dr. Pribor opined Plaintiff had reached maximum medical improvement regarding the injury but not underlying psychiatric disorders that had gone untreated. Dr. Pribor stated Plaintiff's prognosis was fair for treating those disorders given Plaintiff's resistance to psychological and other treatments. (Tr. 1425)

James W. Morgan, Ph.D., the state agency psychologist, determined Plaintiff was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods. While she had non-exertional limitations, Dr. Morgan opined Plaintiff could perform jobs in the sedentary to medium work ranges. (Tr. 74-83)

## III. Discussion

### A. <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act,
Plaintiff must prove she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th
Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir.
1992). The Social Security Act defines disability as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12 months." 42 U.S.C. §
423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental
impairment or impairments are of such severity that [s]he is not only unable to do [her]
previous work but cannot, considering age, [her] education, and work experience, engage
in any other kind of substantial gainful work which exists in the national economy." 42
U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step
process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a),
404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of
disability, the process ends and the claimant is determined to be not disabled.'" *Goff v.
Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d
584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial
gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must

have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish [her] impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove she is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the

Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

## B. The ALJ's Decision

The ALJ's Decision conforms to the five-step process outlined above. In the decision dated February 9, 2018, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020. She had not engaged in substantial gainful employment since August 15, 2015, her alleged onset date. Further, Plaintiff's severe impairments included mild neurocognitive disorder; residuals of status post-concussion; depressive disorder; and post-traumatic stress disorder. However, she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-17)

After carefully considering the entire record, the ALJ found Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following non-exertional limitations: no work at unprotected heights, around moving mechanical parts, or other such hazards; limited to performing simple, routine tasks, but not at a fast production rate pace such as an assembly line; and limited to work that would require only occasional changes in the work setting." (Tr. 18) The ALJ further found Plaintiff was unable to perform any past relevant work. However, in light of her younger age, at least high school education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could

16

perform. Such jobs as set forth by the VE included laundry worker II, cleaner I, and lamination assembler. The ALJ determined the VE's testimony was consistent with the information contained in the DOT. Because Plaintiff was capable of making a successful adjustment to other work existing in significant numbers in the national economy, the ALJ concluded Plaintiff had not been under a disability from August 15, 2015 through the date of the decision. (Tr. 18-26)

## C. **Analysis of Issues Presented**

In her brief to the Court, Plaintiff argues the ALJ (1) failed to accord adequate weight to Plaintiff's treating physician; (2) erred in selectively relying on the treating physician's opinion without explaining why the entire opinion was not accepted; (3) failed to properly evaluate the opinion of the treating physician; (4) erred in according more weight to consulting physicians; (5) failed to find a closed period of disability; (6) erred in failing to properly consider the impact of Plaintiff's migraine headaches on her ability to work; and (7) erred in finding Plaintiff's migraines were not severe. The Defendant responds the ALJ properly evaluated the record, including Plaintiff's subjective symptoms and medical opinion evidence, and properly formulated Plaintiff's RFC and found she was not disabled. For clarity, the Court will place these claims in two groups: (1) evaluation of opinion evidence; and (2) evaluation of non-severe impairments. The Court notes, however, that Plaintiff's brief contains conclusory statements and little analysis supported by the record or relevant case law.

## *1. Evaluation of Opinion Evidence*

While difficult to discern Plaintiff's arguments, she appears to assert the ALJ erred in assessing the medical evidence by affording significant weight to the opinion of the non-examining state agency psychologist, Dr. Morgan, instead of Plaintiff's treating physician, presumably Dr. Fenton. Plaintiff also seems to argue while the ALJ afforded significant weight to Dr. Pribor and Dr. Lantsberger, the ALJ erroneously ignored parts of those opinions which weighed in favor of disability.

In determining whether a claimant is disabled, medical opinions are considered by the ALJ together with the rest of the relevant evidence received. 20 C.F.R. § 404.1527(b). The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The ALJ may reject the conclusions of a medical expert if they are inconsistent with the record as a whole. *Id.* The Court notes a "[a] single evaluation by a nontreating psychologist is generally not entitled to controlling weight." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) (citation omitted). However, where a state agency physician's opinion is consistent with the other medical evidence, the ALJ may properly rely on that opinion, in part, when formulating a claimant's RFC. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).

Here, the Court finds the ALJ thoroughly assessed the medical evidence and

18

determined Dr. Morgan's findings that Plaintiff could perform simple, repetitive work tasks was consistent with the unremarkable neuropsychological test results and supported by generally unremarkable mental status examination findings and the evidence as a whole, including Plaintiff's daily activities. (Tr. 24) The ALJ also gave significant weight to both Dr. Pribor and Dr. Lantsberger, Plaintiff's treating psychologist. However, the ALJ opted to give greater weight to the more restrictive limitations by Dr. Morgan. (Tr. 24) An ALJ may give more weight to a non-examining consultant where the opinion is more consistent with the record as a whole. *See Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014).

With respect to Plaintiff's treating physician Dr. Fenton, the ALJ properly noted the statements regarding disability by Dr. Fenton were merely conclusory with no objective support. (Tr. 24) "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). *see also* SSR 96-2P, 1996 WL 374188 (July 2, 1996) ("Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted); *see also Wildman v. Astrue*, 596 F.3d 959,

964 (8th Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration). Finally, the ALJ correctly noted disability determinations were reserved for the Commissioner. *See McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (judgment regarding whether a claimant is disabled is reserved for the Commissioner).

The Court concludes the ALJ did not err in her assessment of the medical evidence in the record. *See Turner v. Colvin*, 621 F. App'x 865, 868 (8th Cir. 2015) (the ALJ did not err in discounting a medical opinion and giving greater weight to conflicting opinions that were more consistent with the remainder of the record). The Court finds the ALJ afforded proper weight to the medical opinions of the consultative examiners based upon Dr. Morgan's consistency with the evidence in the entire record. *Mabry*, 815 F.3d at 391. The ALJ need not rely entirely on a particular doctor's opinion or choose between opinions. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The ALJ properly chose to credit the opinions of other examining and non-examining physicians, "none of which indicated that [Plaintiff] had serious functional restrictions." *Id.* Further, review of the record demonstrates the ALJ properly considered all the medical and nonmedical evidence in determining Plaintiff's RFC. The Court finds the ALJ thoroughly discussed all the evidence of record, addressed the consistency of the evidence in the record when viewed as a whole, and properly assessed Plaintiff's RFC based on the relevant, reliable evidence of record. *Crawford v. Berryhill*, No. 4:18 CV 408 CDP, 2019 WL 1326669, at *5 (E.D. Mo. Mar. 25, 2019).

## 2. *Evaluation of Non-Severe Impairments*

Plaintiff also argues the ALJ erred in failing to properly consider her migraines. The ALJ found the evidence in the record did not support a finding of headaches of a frequency and severity to interfere with Plaintiff's capacity to work. (Tr. 23) The record demonstrates that the ALJ did consider Plaintiff's "residuals of status post concussion" to be severe and discussed the evidence related to headaches in the opinion. The ALJ found Plaintiff's headache symptoms merited a precautionary nonexertional environmental limitation of avoiding hazards. (Tr. 23) Therefore, contrary to Plaintiff's assertion, the Court finds that the ALJ properly assessed Plaintiff's headaches as severe.

Further, the ALJ properly found Plaintiff's headaches were not disabling. The ALJ found, and the record supports, that Plaintiff's headache symptoms were treated, stable, and controlled with prescribed medication. "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (citation omitted). Nothing in the objective medical evidence demonstrates that Plaintiff's headaches caused functional restrictions more limiting than those in the RFC determination. Indeed, the majority of Plaintiff's examining physicians did not impose work restrictions or only imposed some non-exertional limitations. *See Ponder*, 770 F.3d at 1195 (stating the ALJ may properly consider the fact that no physicians issued work restrictions in determining whether the plaintiff can work). Thus, the Court finds the ALJ properly evaluated Plaintiff's headaches.

## IV. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Erica Camp's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

Dated this 30th day of March, 2020.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**